. Are the roads getting into Denver? Good. No excuses. We have three cases to hear this morning. May take a break. I think that's unlikely. The first is Mr. Merritt's case on behalf of Timothy Merritt. Good morning and may it please the court. My name is Meredith Essar and I'm arguing this case on behalf of Timothy Merritt. The district court abused its discretion in admitting under rule 404B the facts and circumstances of Mr. Merritt's 2012 and 2014 arrests and the 2016 arrest in its entirety including the facts and circumstances which happened after the date of the instant offense in this case. I want to start with the subsequent 2016 arrest because I think focusing on that first will hone a lot of the key issues in the case. The key here is Mr. Merritt's awareness of the risk. The crucial aspect of the mens rea required for second degree murder is awareness of the risk. According to the jury instructions in the case, in order to prove that Mr. Merritt acted with the requisite mental state for second degree murder, the government had to show that Mr. Merritt knew his conduct posed a serious risk to others and did not care. The key to understanding why the 2016 arrest should never have been admitted is that Mr. Merritt's mental state again required awareness of the risk and the 2016 subsequent arrest had absolutely no bearing on what he was aware of earlier than that. None of the state cases cited by the government rely on any theory like this that you can simply bootstrap a subsequent arrest mental state into the question of what a mental state was at a prior time. So I think this kind of goes to the government's briefing on the doctrine of chances. I think Meyers and Moran and Henthorne all rely on a sort of similar improbable coincidences type of theory. And I think the question is, is there a difference between when you're talking about whether something was mistaken versus purposeful and when you're talking about this very specific circumstance where you have to show awareness of the risk and that the person did not care about that awareness. So you're saying and at least I understood from your brief you were talking about the difference in degree of essentially culpability or intent, degree of intent I guess. And you're saying that there's no real question about degree here. Yes, that's one of the issues. But I think if you step back a little bit, it's easy to look at Meyers, Henthorne and Moran as saying you can always introduce a subsequent arrest based on mental state if they have the same mental state later on. But I think all of those cases rely on this accidental versus purposeful kind of mental state. And the reason why that's key is that under the doctrine of chances and similar cases, you can say these things happened at different times, these weird coincidences or these things like drugs in a gas container in a car that happened at different times. The only common element is the defendant. So what are the chances that he didn't do these things intentionally? And that inference doesn't depend on anything subjective in the defendant's mind. It's an objective. You're looking at a kind of bird's eye view at these improbable coincidences that are happening. And you can look at that objectively without delving into the question of what the defendant's state of mind was. I guess I'm not, it's a pretty fine line, this distinction. But I understand your distinction. But based on how you argued or the trial counsel argued this case, which is telling the jury basically there's just no evidence of malice here. This was, if anything, this was negligence and really there's just no evidence. Why isn't the fact that, I think it was between August and November, he's charged a second degree murder. He then has another very similar DUI in December of 2016 or November of 2016. Why isn't that relevant to the degree of intent? I think it's relevant to whether he's a bad person. And I think it's relevant to whether he's a callous person. But I don't think it's relevant to what he knew subjectively at the time of the instant offense. So it's relevant to the fact that he didn't care, which is part of the malice aforethought definition. He simply didn't care. I think that it's relevant to whether he is a careless person as a general matter. But it's not relevant to whether he cared at a subsequent time. Because if the key is awareness of the risk, if anything that happens after that time is just not relevant. And to go back to your earlier question about that part of the defense theory was that he was not at fault. I think there were multiple defense theories. I think that was one of them. I think another one was this difference between recklessness and gross recklessness. The difference between manslaughter and second degree murder. And that is the place where the government was offering this evidence was to close the gap between the recklessness and gross recklessness. So even though there were multiple defense theories, the proponent of the 404B evidence was saying that we need this evidence in order to close the gap between recklessness and gross recklessness. It wasn't to go to whether it was an accidental occurrence. When you say it just shows he's a bad man, it's a lot more precise than that. He's the sort of person who is willing to risk the lives of others by getting drunk behind the wheel. It's much more specific than an overall character trait that he's a bad person. And doesn't that make a difference in the analysis? I agree with you that it's more precise. It is relevant to he's the sort of person who would get drunk and get behind the wheel. But it's still not relevant to his awareness of the risk at a prior occasion. And I think that's the key distinction. It's relevant to whether he ignored the risk at a prior occasion. It's relevant to whether he ignored the risk subsequently. But it's not relevant to whether he ignored the risk at a prior occasion because that inference depends on a propensity inference about his character. And again, I want to reiterate this idea that the Moran-Henthorne-Meyers cases are seductive in that they say you can always introduce subsequent act evidence in order to show a person's intent. But I think the way that they use this word intent is a little bit confusing. Because sometimes it seems as though they use it to, the cases use it to say general mens rea. But sometimes it's about intentional conduct. And I think the precise way of using it in that context is to connote intentional conduct. And one of the issues here is You've used almost half your time and you haven't talked about the first two incidents. And that's pretty relevant because it's not at all clear that the third would have made a difference. So if the first two get in, you've got a harmless error issue. So let's see if you prevail on the first two. Okay. I think the first two as was litigated below, no one was arguing that the convictions couldn't come in on the first two. But the way that the evidence was presented, which included facts and circumstances way beyond either the fact of the arrest or the fact of conviction, including inflammatory facts such as Mr. Merritt having vomited out the car window, throwing beer cans out the window, lying, being belligerent, all of those facts and circumstances were irrelevant to his awareness of a risk and also highly prejudicial to the case because it urged the jury to look at his general behavior of callousness, his general behavior of being a slovenly, often drunk person. And I think that also goes back to the government's whole case against Mr. Merritt, which they admit was based, or case on second degree murder was based on showing that he was a person with a character for callousness. I see your brief as focusing quite a bit more on some of the factors, like you mentioned the vomiting and the vomit and the beard and the belligerence. But as I read your pretrial argument you were simply saying none of the facts are admissible. Period. Only the convictions are admissible. None of the facts. And then there was no objection that I could see at trial to  us now to say, okay, well, even if you say that the officer's testimony about the fact that he was weaving in the 2012 conviction was relevant, this other testimony about the vomiting out the window, that wasn't relevant to show malice aforethought for the 2016. So I can see what I'm saying. There was no objection to any particular facts and shouldn't you have done so? Shouldn't you have objected and let the trial say that this evidence could come in, but you don't need to go that far? I think, so one thing to note is that the government's initial 404B notice included all of those facts and circumstances. And there was extensive litigation about it at the district court. And so I think the district court was already aware of all of the facts and circumstances that the government intended to present. And, I mean, to the government's credit, it really, what they presented at trial really did track their pretrial motion. And so I think that maybe counsel below could have been a little bit more granular in the objections. But I think that that district judge also, to his credit, really didn't want to interrupt the trial. And I think that all parties kind of agreed that that issue had been litigated and decided. And I think that that's mostly based on the government's pretrial briefing and the district court's order, which essentially said, yes, all of this stuff can come in. Why do you say that the particulars aren't relevant to the extent of the risk? He now knows that if he's drinking and gets in the car, he could be totally out. And that's what the evidence showed. He was just totally incompetent. So he knows, gee, if I'm drinking and driving, I may become totally incompetent. And that certainly is relevant to the risk created, is it not? I think so. I mean, I think there's some question about what level of awareness he actually had about his conduct. I mean, the government's brief talks about how he was oblivious to the world around him. He didn't understand his conduct. I think in the 2016, the subsequent arrest, he told the officer, no, I wasn't. I was driving in a straight line. So there's a lot of facts that seem to suggest that he doesn't, he isn't aware. Or he lies. Well, the question is whether the jury can draw an inference. Correct. And they don't have to believe his later account as indicating what he actually thought. I think, though, the key is that certain of those facts are just so inflammatory and so irrelevant. Like the vomiting and the beer cans. I mean, they're not relevant to his awareness of the risk. They're only facts that give you a rationale why they're relevant to the risk. Why do you say, tell me why the fact that he was totally out of it, totally incompetent, is not relevant to the risk. And his knowledge that he, if he drinks and drives, he could be so totally incompetent that he clearly has an incredible risk of causing damage. I'm not conceding that this should have come in. But I think that there's a distinction between maybe his driving behavior, the swerving, the crossing the center line, the crossing across several lanes of traffic. Maybe that would give him some awareness. But other facts, like the fact that he was lying, that he was belligerent, I mean, those are just completely outside the realm of the narrow mens rea question. I would like to reserve some time. Counsel, I'm sorry. Could you just return to the harmlessness question, then? Given the first two, how about the third? What separates the third? What additional harm could that cause? Well, I think that a jury who sees that someone has been in an accident that killed someone and then released and does it again, I think a jury, you know, any person sitting in the jury box would want to put this person behind bars under kind of an incapacitation theory. So I think the 2016 arrest is so much more prejudicial than anything else. So it's basically different in kind? Is that your argument than the first two? I don't know that it's different in kind, but I think that given that it was after someone died, I think it's a much stronger, there's a much stronger impetus for the jury to convict based on the subsequent arrest. I also think the very fine distinction between the recklessness versus gross recklessness, it's difficult, if any of these facts are prejudicial and irrelevant, it's difficult to see how the verdict would not be called into question because it was such a fine line between the mens rea at issue. Thank you. Thank you. Thank you. May it please the court, I'm Marissa Miller and I represent the United States in this matter. I'd like to start by talking about why the underlying facts of the two prior convictions were properly admitted. If you go to the record, all of this testimony actually tells an important part of the story of the other offenses. None of it was irrelevant. These facts go to why the police pulled the defendant over in the first place, how they knew he was drunk, exactly how drunk and disoriented he was, and how dangerous the situation was. At the same time, the facts themselves have a warning quality to them just like the underlying conviction does. The logic of TAN is essentially that a defendant may be more aware of the dangers of a certain practice based on his past experiences. And the reality is that not all DUIs are created equal. Some are more dangerous than others. And depending on the underlying facts, a defendant might take very different things away from these different experiences. So on the one hand, if we have someone who has an extra beer or two at the restaurant, drives home, doesn't get into an accident, gets a DUI, and on the other hand we have someone like the defendant who drinks eight beers, he's driving in the wrong lane, everyone has to move out of his way so that a crash doesn't happen, the defendant in that second example is going to have a much stronger, much better, much more personal understanding of the dangers of getting behind the wheel drunk. The defendant also argues that even if these facts were probative, they were ultimately too prejudicial. And there's a few points I want to make on that. Of course, this is an extremely deferential standard to the district court. Even at the district court level, excluding things under 403 is an extraordinary remedy. But also in this case, I think it's especially important to distinguish between prejudice and unfair prejudice. And as this Court has said, unfair prejudice is something that encourages the jury to make a decision based on things that don't have anything to do with the defendant's guilt. But in this case, an element of the crime that the government was required to prove was that the defendant exhibited a wanton disregard for human life. In other words, that he knew drunk driving was bad and he didn't care. So to the extent the jury... Can I just stop you there? So to that point, can you help me understand or just address your opposing counsel's argument that the extra facts were not necessary? The vomiting, the beer cans. That was unfair. Sure. And I guess my response to that would be, first, it's part of the story. The reason the officers tell us that they saw the defendant vomit out of the window of the car, that's why they pulled him over. One of the reasons they pulled him over in the first place. That's how they knew he was extremely drunk. Throwing the can out the window, again, was not designed necessarily to tell the jury that the defendant was callous. It was actually an open can and there was still beer in it. So that just, again, goes to the very dangerousness of the DUI that happened in 2012, which is he's not just very drunk behind the wheel of the car, but he's still drinking. I think the vomit in the beard, again, also goes to the level of intoxication, as well as maybe the level of disorientation. I think if you're relatively sober and you have vomit in your beard, you will probably notice it and wipe it away. That just goes to show how out of it the defendant was and how he really wasn't remotely in a position to be in control of a car. So I guess just with regard to those prejudicial facts, I also think Judge Moritz, there was no contemporaneous objection and under my reading of the record, the government, these facts weren't presented to the district court at the hearing below and so it really was... They weren't presented? I thought that's what we just heard from the public. I might have the record wrong, but at least the government's briefing from what I recall was a relatively short description of each of these incidents. Was there a pre-trial motion in limine where this was resolved? Yes. And then there was no renewal of the objection at trial, is what you're saying? No, there was no renewal and there was no specific objection to the police officer telling us about the vomit. So there was no objection at trial saying this goes beyond your rights. And so at least to the extent we're talking about those extra facts, I would urge the court to apply a kind of plain error standard. I would also like to address the harmlessness argument very briefly. Before you get to harmlessness, let's talk about the 2016 conviction. Sure. Can you address her argument about the line of cases that you seem to be relying on? It did look to me like none of those really address the circumstance here. Those seem to be making a distinction between when someone was arguing that their conduct was accidental or mistake and then so this subsequent evidence is used to show that no, this isn't a mistake. It was an accident. It's repeated and that is different than what we have here. Sure. I agree. I think the facts of those cases like Morris and Morin and Henthorne are different in nature. I don't think the logic of those cases is limited to that factual situation. And I guess I have two points I want to make here. One is that in the sort of context that we're in, I don't actually think it's incorrect to think of the defendant's argument that this was involuntary manslaughter as an argument that it was an accident. It was a mistake. Because the difference between involuntary manslaughter and second-degree murder here is admitting that you did the conduct much like it was a mistake, it was an accident, but saying that you didn't have the culpable mental state. I never meant to hurt you. Well, there's a degree of mental state required so it's definitely different than saying something was an accident. Yes, there's absolutely a level of culpability. I think the logic still helps us get there. One example I've come up with is a skier who hit someone on the slopes and after the crash she says, I know I was going really fast but I lost control, it was an accident. But I think if we find out that over the rest of the ski season that same person has been stopped by ski patrol for similar conduct, you know, going too fast, skiing out of control, that is circumstantial evidence that suggests that that first crash wasn't a mistake in the negligent way that he claims, but rather was perhaps a result of that more culpable mental state. Well, counsel, can I get you to directly address, I take your opposing counsel's argument to be, you just can't backdate awareness. Yes. I mean, that's just you can't backdate awareness. The focus is what did the person think at that moment and just kind of as a bright light. Can you help me? Sure. So this is a very different theory of relevance than the theory that came in under TAN, which is about what the defendant knew at the time. This is talking about how we determine a person's mental state, especially one like this, when we don't have a direct admission from the defendant, you know, what was going through his head. And so really the question is, how do we know that a defendant understands the risk of a certain behavior but doesn't care? Well, you know, one way we know it is he does it anyway. And what would make us more sure of that fact? That he does it again and again and again. And that's sort of where this doctrine of chances idea comes in. Well, let me stop you there. Isn't the doctrine of chances, as your opposing counsel explained it, this is just such a weird coincidence. How could this have happened? Huh. And that, maybe you can tell me, is where's the weird coincidence part in these facts? Sure. So one example of the doctrine of chances that doesn't necessarily involve an accident but is more looking towards figuring out someone's mental state is in the employment discrimination context. So if I get fired and I suspect it's because I'm a young woman, how do we infer discriminatory animus? Well, if my boss then fires another six people, five of them are young women, we're looking at that as circumstantial evidence. Again, is it a coincidence? Is that what we're asking? Or are we really just trying to figure out what was going through this person's head? But in that context, do we call it the doctrine of chances? I would say we don't call it the doctrine of chances, but it is discussed in the literature as an example. I will say also the 10th Circuit really doesn't like the phrase doctrine of chances. And I agree, it's an incredibly academic and abstract concept. I mean, all the doctrine of chances is talking about is looking at statistical anomalies and maybe using that anomaly to come to some conclusions about the defendant's mindset. So here, to answer your question, the rarity is actually the fact that this defendant has been caught driving drunk four times in the course of four years. And part of us might say, well, that's not a crazy accident like pushing your wife off a cliff, but it is I would say pretty rare in the general population for someone to have four years. And again, it's not irrefutable proof of what's going through the defendant's mind. Well, the problem is, well, it's just the problem is it's not about the DUI convictions. He admits he was DUI. Right. We're using this to get to the mental state. You're using it to show malice of forethought. Yes. Of forethought. Because we can't read his mind. But the reason it's not, so it's not propensity in the sense that he admits he was driving drunk. So we're not saying this guy has a propensity to drive character prohibition that we're fortunately not dealing with. No one thinks that that evidence was introduced for this purpose. But as to Judge Hart's point earlier, we need to distinguish, I think, between mens rea and character. And character is on a much higher level of generality. I think when we're talking about the prohibition on character evidence, we're talking about evidence that looks at whether a defendant is a bad person or is an immoral person or has a criminal disposition or has a tendency towards violence. And here, admittedly, we have this unusual problem where our mental state looks a lot like a character trait. I mean, the government has to prove that this guy knows that he's putting other people's lives in danger and he doesn't care. I think for many jurors, the automatic inference from that is that he is a callous person. But that inference comes after the government has proved that element. It's not part of the chain of relevance. Can you point me to any cases because we're all talking about mayors and that line of cases that no one seems to suggest are really quite on point. Can you point me to any cases, even outside of this jurisdiction, where a subsequent DUI conviction has been used to show intent or malice of forethought in particular? I don't believe I can, but I will say that to the extent we're looking for support in this circuit, I'd quote from both United States v. Tan and this court's other... I don't understand. Anything else? Well, so in Leonard, the court says, persistent violations of the law betoken a conscious disregard for these considerations. But the point is a conscious disregard showing malice of forethought prior to the crime. I don't see how you can extend those cases to this situation. I guess, again, I would go back to the example of discrimination. The fact that we see a pattern in the future can still provide circumstantial evidence of what happened in the past. And that's Maris as well. We're saying she knowingly distributed these drugs in the future. What are the odds that she didn't do it here? And that's a little bit what we're doing with the subsequent conviction. It looks a lot like he drove with malice of forethought when he got a DUI three months after he killed someone. Does that make the fact that he acted with malice of forethought on this occasion more or less likely? And again, that's just the question of relevance. Harmless Sarah, why wouldn't this, if we disagree with you, why wouldn't this have made a difference to the jury when they heard that four months later, he's done the same thing. He just didn't kill somebody. Sure. So two responses to that. The first is obviously even without the subsequent conviction, the two priors are going to come in as well as the underlying. But this is very, very damaging, obviously. The 2016. I don't know how you, how do you disassociate that for the jury? I mean, I think that what all of the evidence showed, even before the subsequent conviction, is that this man has a drinking problem and he simply doesn't care when it comes to getting behind the wheel and driving drunk. And I don't think that the 2016 conviction adds a lot to that calculus. But I would also say that this is another case where we really have overwhelming evidence of his guilt because malice of forethought can be proven by the facts of the offense itself. So here we have a blood alcohol content level of 0.24 at the time of the crash. Defendant himself admits he has eight beers at least, starts drinking at 2.30, gets behind the wheel 30 minutes beforehand, and the police find 30 empty beer cans in his car at the crash. Again, he's entirely in the wrong lane. His foot is still on the gas at the time of the crash. He has no real need to drive. He's simply going to a casino and he can't drink at the casino. So there is an implication that perhaps his plan was to get drunk before he could go to the casino. And then, of course, there's the, you know, all the evidence in the record that he really didn't demonstrate any remorse. And I think all of that could have shown malice of forethought, especially once you throw in the how this verdict could have come out the other way. If the court has no further questions, I'll consume my time. Thank you. Does the defense have any more time? I'll give her a minute. Thank you, Your Honor. I'd like to return to this phrase that I'd used, which is that you can't backdate awareness of the risk. I think that's exactly what I was trying to convey with why the 2016 arrest and the facts and circumstances of the 2016 incident were so prejudicial and so irrelevant. Because as I was trying to probably unsuccessfully convey, I think there aren't a lot of cases that deal with this kind of subsequent conduct in a way. And I think that's why the government can't point to any of those cases, but I think that's why this is such a technical and difficult issue. How do you distinguish the example of employment discrimination? That's evidence of intent, which is more than recklessness. What's wrong with that analogy? To be honest, I didn't quite understand the government's analogy there. Well, you have a case of a woman being fired. She claims that it was on the basis of her gender. And the plaintiff puts on the fact that after she was fired, five other women were fired. Similar circumstances. Why is that not good evidence of intent? And I suspect that actually happens all the time, that type of evidence. Why is that not analogous to the situation here? I think that's analogous to a Doctrine of Chances situation and not to a recklessness mens rea. But it goes specifically to intent. The question isn't whether the person was fired. It was what was the intent of the boss when she was fired. But she was intentionally fired based on and that's why this word intent is so slippery. Because I think that you can use it as just general mens rea. What was the mens rea? What was the intent? But I think in that scenario, a person was intentionally fired on the basis of their gender. And so having those kinds of things happen again and again and again, you can objectively infer from a bird's eye view that the person doing the firing had an intentional mens rea of wanting to fire people of a certain gender. When you step back... You've gone a minute over your minute. Any questions? Thank you. Thank you. The case is submitted.